BAKER, (GOLDSBOROUGH v.) See Case No. 5,516.

━━━━━

## Case No. 770.

### BAKER v. HEMENWAY.

### The CITY OF VALPARAISO.

[2 Lowell, 501.] [1]

District Court, D. Massachusetts. Nov., 1876.

SALVAGE—TOWAGE AND SALVAGE—AMOUNT DECREED.

1. A steamship, worth, with her cargo. $500,-000, took the ground in the harbor of Boston; and was pulled off, at about high water, by a large tug, assisted by the engines of the steamship, and by two small tugs, the principal power being furnished by the ship and the large tug, and the small tugs being occupied less than an hour. Held, that the small tugs had rendered a salvage service.

[Cited in The Athenian, 3 Fed. 250.]

2. That they were to be paid a liberal compensation, much more than their hire for an hour, but not one into which the value saved would enter as a very important element: Sums decreed, $800 and $400.

[Cited in The Athenian, 3 Fed. 250.]

[In admiralty. Libel by Baker and others against the steamship City of Valparaiso

(Hemenway, claimant) for salvage.] The City of Valparaiso was a new steamship, built in England, and intended for the trade between Boston and Chili. In going down the harbor of Boston on her first voyage she grounded on Lovell's island in the daytime, about an hour and a half or two hours before high water. The wind was strong from the north-west, and tended to set her further on the shoal. She had a large and powerful tug, called the C. S. Winch, in attendance, to bring back some passengers; and, while lying aground and backing her own engines with all their power, she accepted the services of the two comparatively small tugs, the Macy and the Woolley, whose owners and crews bring this libel. The Macy assisted the Winch in pushing against the steamer's quarter, to keep her up to the wind; the Woolley assisted in drawing her off. The steamer was aground a little more than an hour. The facts were not seriously disputed; but the opinions of the witnesses were opposed upon the question how far the services of the tugs were important to the safety of the ship, her own witnesses testifying that she had ample means to haul off by anchors, &c., in addition to her engines, in case those alone had failed. The after-part of the ship was lightened by pumping out the water ballast. The vessel pursued her voyage to Valparaiso and back, and on her return was found to have been considerably injured by taking the ground, though the leak caused by it was not large. The ship and cargo were worth nearly half a million dollars. [Decree for libellants.]

J. C. Dodge, for libellants.
E. R. Hoar & S. Hoar, for respondent.

LOWELL, District Judge. That a vessel in distress accepting services without a special contract, and in the absence of a usage of the port, accepts a salvage assistance, is abundantly established. It will be enough to cite some of the decisions in this circuit, though the law is the same in all: The Versailles, [Case No. 6,365;] The Independence, [Id. 7,014;] The Island City, [Id. 55;] The Susan, [Id. 13,630;] The James T. Abbott, [Id. 7,202;] M. B. Stetson, [Id. 9,363;] The Coringa, [Id. 1,736.]

The important and difficult part of the case is not the name by which it is called, but the amount which shall be decreed. A very large value was saved, but under circumstances which do not contain other elements which should require the quantum to be large. The service resembled towage. I do not mean that there is any generic difference between towage and salvage. In the absence of a contract, the towing of a vessel in peril or disabled is salvage; but as a convenient word to distinguish an ordinary case of contract from one of salvage, "towage" is often used.

The increased use of tugs, and their rival-

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

ry, have operated to reduce the value of a salvage service in most of the ports to something not very much beyond the price of a towage contract contingent upon success. Competition has established what might almost be called a quantum meruit for cases of this kind. A striking illustration of this is found in the history of two cases which were tried in the southern district of New York. It had been held by the courts there that a corporation organized for saving vessels, and paying its men wages which did not vary with the service performed, could not be salvors. The decision was overruled by the supreme court: see The Morning Star, [Case No. 9,818;] The Camanche, 8 Wall. [75 U. S.] 448. In the mean time, two more cases of the kind had arisen in that district, and Judge Blatchford, refusing salvage, had allowed to the corporations what he called a liberal allowance for work and labor: The J. F. Farlan, [Case No. 7,313;] The Stratton Audley, [Id. 13,529.] When these cases were reviewed in the circuit court, the decision of the supreme court had reversed the rule on which they were avowedly decided; but Judge Woodruff, nevertheless, affirmed the decrees, as having awarded a sufficient salvage: The J. F. Farlan, [Id. 7,314;] The Stratton Audley, [Id. 13,530.] That affirmance was wrong, unless Judge Blatchford had in fact, though not in name, given salvage. And such I suppose to be the case. He spoke of a liberal compensation; but liberality is salvage: there is no place for liberality in an action of contract. The circuit court in effect decided in those cases that salvage performed by means of towage in the harbor of New York should be compensated without any close attention to the amount saved, but rather as a liberal and enlarged compensation for work and labor. We are told by the privy council that value is never wholly lost sight of in these cases: The Amerique, L. R. 6 P. C. 468; and this is true; for the salvage for a small vessel might be much less than the worth of the time and labor employed; and, in a case precisely like this in other respects, if only $500 had been saved, no one would expect my decree to be what it will be in this case. The essential difference in assessing damages in contract and in salvage is, that in the former nothing can be considered but the means employed; in salvage, even when the value saved is left out of account, or nearly so, the general results are quite as important as the means used to accomplish them.

That the City of Valparaiso was in need of assistance, and that it was highly desirable that she should not lie on that shore beyond high water, was and is clear; more so, perhaps, since the amount of injury which she suffered has been found out than it was at the time. I should consider that her master and her owner, who was on board and was insured, had incurred a grave responsibility if they had not accepted assistance. If she had lain there twelve hours, no one will venture to say what the damage would have been.

When, therefore, some of the witnesses say that they do not think she was in peril, all they can mean is, that they believe she would have come off without assistance, not that her position, in itself considered, was not perilous. The weight of the evidence is, that by carrying out anchors and hauling on them with her winches, which were worked by steam, she could have applied as much and even more power in the general direction in which the tugs furnished it. But I have heard no witness say that this operation could have been successfully performed before high water; and I very much doubt it. High water was so near, that the witnesses dispute whether it had been actually reached or not when she came off; and that carrying out anchors would have been a slower work than hitching on a tug needs no testimony.

Most of the work was done by the steamer's engine, and by the large tug which makes no claim here. That which the libellants did appears to have been useful, and, I am inclined to think essential to the rescue at that time.

I have looked at many of the cases besides those already cited, to see how much has been given under various circumstances more or less like these. As well as I can estimate the intent of the courts, it has been to give to tugs what will be a handsome gratuity, enough to induce prompt and even eager assistance; and this would be enhanced slightly by a great value at risk, though in no important or definite proportion to value.

Taking all these circumstances into view, and intending to be liberal, I award to the Macy $800, to the Woolley $400, and costs.

NOTE, [from original report.] For the sense in which contract and salvage are contrasted with each other, see The Louisa Jane, [Case No. 8,532.]