## THE ATHENIAN.[*]

*(District Court, E. D. Michigan.    October 15, 1877.)*

1. MARSHALLING CLAIMS—SALVAGE—WAGES.—In marshalling claims for payment from the proceeds of sale salvag.ᵛ is entitled to be paid in preference to prior claims for seamen's wages.   In this case the claims were directed to be paid in the following order : (1) Salvage services ; (2) seamen's wages; (3) claims for towage and materials, those of a later year ranking those of a former ; (4) claims under the state law.

In Admiralty.

In marshalling claims for payment from the proceeds of sale, salvage is entitled to be paid in preference to prior claims for seaman's wages.   In this case the claims were directed to be paid in the following order : (1) Salvage services ; (2) seamen's wages; (3) claims for towage and materials, those of a later year ranking those of a former ; (4) claims under the state law.

Reference having been made to marshal the claims the commissioner classified them in the following order : (1) Seamen's wages; (2) claims for towage, supplies, repairs, and services in pumping out the schooner, getting her off Stony island reef and taking her to Windsor; (3) claims for repairs and supplies furnished in the home port.   To this report exceptions were filed by the parties who got her off the reef and towed her to Windsor, claiming they were entitled to rank as salvors, and should be paid in preference to those who had simply claims for towage, and materials furnished in the ordinary course of her employment.   It seemed that in coming up Detroit river, with a cargo of coal, in November last, the schooner took the ground upon a reef, in the Detroit river, near its mouth, and

[*]Published on suggestion.

off Stony island, so-called. At the time she struck she was somewhat out of the usual channel, upon the American side, and lay in such a position that the current, and the swell of passing ferry-boats, caused her to swing upon the rocks and injure her bottom.

*F. H. Canfield* and *Jas. J. Atkinson,* for the salvors.

*Mr. Donnelly,* for the seaman.

*George E. Halliday,* for material men.

BROWN, D. J. The only question in this case is whether the expenses of getting this vessel off Stony Island reef and towing her to Windsor are entitle l to be paid in preference to the seamen's wages and the ordinary claims of material men. This claim is not for salvage in the strict sense of the word. There was no immediate danger to the schooner; there was no peril incurred by the salving vessel. The job was undertaken upon a contract for a sum certain, substantially like any other contract for towage services. Had the vessel been sunk at her dock, or at any other place where there was no reasonable probability of her suffering injury by remaining, I should not consider the claim as entitled to any particular favor; but, under the circumstances, I think the vessel was in a condition to have salvage services rendered her. She was fast upon the rocks, was leaking badly, and, indeed, was full of water; passing vessels caused her to sway back and forth; she was also subject to the action of a strong current, and a change of wind to the south-east might have created sufficient sea to have broken her up. While, as before observed, the case is not one of strict salvage, inasmuch as the hiring was by the day, and no peril was incurred by the salving vessel, I do not regard this fact as material in determining the nature of the service. The case is not one of ordinary towage, and, if not towage, it is salvage. The term "extraordinary or meritorious towage" made use of in some cases is misleading and of no practical importance. As distinguished from towage, salvage implies simply some degree of danger and some need of extraordinary assistance. As observed by Dr. Lushington in *The Reward,* 1 W. Rob. 174, 177: "I apprehend that mere towage service is confined to

vessels that have received no injury or damage, and that mere towage reward is payable in those cases only where the vessel receiving the service is in the same condition she would ordinarily be in, without having encountered any damage or accident."

In the case of *The Westminster*, 232, he adds: "The degree of the danger is immaterial, in considering the nature of the service, for if the cargo at all required assistance to remove it to a place of safety, the service then assumes the character of a salvage service." See, also, *The James T. Abbott*, 2 Sprague, 101; *Baker* v. *Hemmingway*, 2 Low. 501. In the case of *The M. B. Stetson*, 1 Low. 119, the court remarks: "Speaking generally, it may be said that the mere fact that a vessel is aground, is enough to show that she is in a situation to have a salvage service."

While this language was not intended to apply to a grounding upon a mud bank in a river or harbor, which is an ordinary incident of navigation, I think it may be properly applied to any case where the grounding is attended with danger to the vessel, if she be suffered to lie there.

The case being one of salvage, libellants are entitled to be paid first, even before the seamen whose wages were earned prior to these services, since it is owing to their exertions that anything remains to which the lien of the seamen can attach. *The Selina*, 2 Notes of Cases, 18; *The Mary Ann*, 9 Jur. 94; *The Panthea*, 1 Asp. Mar. Law Cases, 133. The commissioners will amend the report by classifying the claims as follows: (1) Salvage services; (2) seamen's wages; (3) claims of tugs and material men, those of a later year ranking those of a former; (4) domestic claims.

NOTE.—See *Dalstrom* v. *Schooner E. M. Davidson*, 1 FED. REP. 259; *P. P. M. B. & W. Co.* v. *Steam-Boat H. C. Yeager*, Id. 285; *Mayo* v. *Clark*, Id. 735.