### THE ANN C. STUART.

(District Court, D. Maine. September 15, 1917.)

No. 362.

1. SALVAGE ⊚═34—RIGHT TO COMPENSATION—AWARD.

Libelant, who, at the request of the master of a salt-laden schooner of 50 tons valued at $1,000, sent a steamer of 44 tons, an experienced pilot, and 10 other men on a dark night to a dangerous point on the coast, where the schooner was ashore in an exposed place, without other help, and towed her into deep water and to a harbor, performed a salvage service entitling him to an award of $200, apportioned $80 to the owner of the steamer, $20 each to libelant and to the pilot, and $8 to each of the men.

2. SALVAGE ⊚═34—COMPENSATION—TUGS.

The increased use of tugs does not tend to reduce the value of salvage services, or change the intent of the courts to give to tugs a substantial gratuity, to induce their prompt assistance, when required, in case of actual or reasonably apprehended danger.

In Admiralty. Suit by James E. Brennan against the schooner Ann C. Stuart, to recover for salvage services rendered to the schooner and to her cargo. Decree for libelant.

Benjamin Thompson, of Portland, Me., for libelant.

G. B. Stuart, of Ellsworth, Me., and Verrill, Hale, Booth & Ives, of Portland, Me., for claimant Mary C. Stuart.

HALE, District Judge. The libelant, in his own behalf and as agent for the Port Clyde Cold Storage & Fisheries Company, owner of the steamer Princess, and in behalf of the officers and members of the crew of the steamer, brings this suit to recover for salvage services rendered to the schooner and to her cargo. Salvage for the cargo has already been settled. The salvage claim here considered is only for the schooner and freight.

---

⊚═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The Ann C. Stuart is of the burden of about 50 gross tons, and at the time in question was under the command of Capt. John F. Sprague, on a voyage from Gloucester, Mass., to Manset, Me., with a cargo of about 200 hogsheads of salt. The Princess, the steamer rendering the service, is of the burden of 44 tons, about $76^4/_{10}$ feet long, $15^7/_{10}$ feet beam, and about $6^4/_{10}$ feet depth of hold. She is employed by her owner in freighting fish.

[1, 2] On October 12, 1915, in the early evening, the schooner struck on a part of Hart's Island Bar called "the bight," an exposed point near the entrance to Port Clyde harbor. At that time it was low water; a moderate sea was running; a light breeze was blowing from the southwest; the night was dark and threatening. After the schooner struck, her master let her sails run down, dropped her kedge anchor, and started, with one of the crew, in a small boat, for Port Clyde for help. After making an application to the master of a motor boat, who could give him no help because his boat was loaded with coal, Capt. Sprague applied to Capt. Brennan. Capt. Brennan sent for Capt. Chadwick, an experienced pilot, to take charge of a towing vessel; he got 10 other men to go with Capt. Chadwick, to assist in the work. Four men were sent in a dory to locate the position of the schooner and to be ready to run a line to her when the towing vessel reached her. An effort was made to get the Pathfinder, a motor vessel, to render the service, and in doing so she took fire. The fire was put out, but it was not deemed advisable to start her again. The libelant then gave orders to take a larger steamer, the Princess, then lying at her wharf with banked fires. Capt. Chadwick took charge of the Princess, and proceeded to Hart's Island Bar, where the schooner was found in the "bight" on a dangerous part of the bar. She was broadside to the shore, having her small kedge anchor down, with 15 to 30 fathoms of line. It was a dark night; the schooner had gone ashore in an exposed place, in such a way that, when the tide flowed, the wind and sea tended to work her up higher on the bar. There is some testimony tending to show that the schooner had floated on the rising tide before the salvors arrived. A hawser was taken off to the schooner, and she was towed out of her exposed position, into deep water, and back to Port Clyde.

In The Lyman M. Law, 122 Fed. 816, this court has considered the leading elements in determining the amount of a salvage award. In The Rebecca Shepherd, 148 Fed. 727, 731, this court has occasion to comment on the fact that the same service may sometimes be called either salvage or towage, and that it is often immaterial by which name it is called. The material thing is that the court should give a proper amount of compensation, and should, where the circumstances require, give such award as will encourage similar services. In Baker v. Hemenway, 2 Low. 510, Fed. Cas. No. 770, Judge John Lowell referred to the increased use of tugs, as tending to reduce the value of salvage services. It clearly does not, however, change the intent of courts to give to tugs a substantial gratuity, in order to induce prompt assistance, when such assistance is required in case of danger, either actual or to be reasonably apprehended.

In the case before me it is not necessary to consider how many of the elements mentioned in The Lyman M. Law are present. It is evident that the case presents a salvage claim of some merit. Salvage assistance was sought by the master of a vessel in distress. In his protest, Capt. Sprague says he "deemed it advisable to procure assistance as soon as possible for the preservation of the vessel and cargo." Great danger was reasonably apprehended. No other help was at hand. The service was rendered on a dark night, at a dangerous point on the coast. On account of not being able to procure a small vessel, it was found necessary to employ a large steamer. Twelve men in good faith went out in the nighttime, at the call for service, although the event proved that the labor of all was not required. A short time was consumed in the actual salvage service; but this does not tend to reduce its value.

The schooner receiving assistance was, from the whole testimony, I think, of the value of at least $1,000. While the amount of property saved and the value of the vessel rendering the services are not always decisive considerations, as Judge Lowell has observed, they bear somewhat upon the vital question of compensation; and we must always bear in mind that "the compensation should be enough to induce prompt assistance."

After a careful examination of the testimony, I award the following sums:

To the Port Clyde Cold Storage & Fisheries Company, the owners of the steamer Princess .......................................... $ 80.00
To James E. Brennan, the sum of ................................. 20.00
To Capt. Alvah Chadwick, the sum of ............................. 20.00
To Clarence Thompson, the sum of ................................ 8.00
To Louis Hart, the sum of ....................................... 8.00
To Ernest N. Wilson, the sum of ................................. 8.00
To Charles Jones, the sum of .................................... 8.00
To Orrin Brown, the sum of ...................................... 8.00
To Russell Brown, the sum of .................................... 8.00
To Capt. Winfred W. Flinton, the sum of ......................... 8.00
To Capt. Henry Davis, the sum of ................................ 8.00
To William Aylward, the sum of .................................. 8.00
To Walter D. Hall, the sum of ................................... 8.00
                                                                 _____
                                                                 $200.00

A decree may be drawn, consistent with this opinion. The libelant recovers costs.