### THE BESSIE L. MORSE.

(District Court, D. Maine. May 12, 1919.)

No. 507.

SALVAGE ☞31—RIGHT OF CAPTAIN AND CREW—RESCUE FROM FIRE.

Where the captain and crew of a gasoline boat, on seeing smoke coming from an auxiliary gasoline schooner, whose flag was displayed, union down, as a call for help, went to her assistance, and towed her through rough water and some wind to the lee of an island, where the fire was extinguished, thus incurring some danger, they were entitled to $500 salvage; the value of the schooner being from $2,800 to $5,000 or $6,000, and the value of their boat being from $5,000 to $6,000.

In Admiralty. Libel by Edward F. Brackett and another against the schooner Bessie L. Morse. Decree for libelants, in accordance with the opinion.

Nathan W. Thompson and Emery G. Wilson, both of Portland, Me., for libelant.

Gerry L. Brooks, of Portland, Me., for claimant.

HALE, District Judge. On the morning of November 30, 1918, the schooner Bessie L. Morse left Boothbay Harbor, Me., for Grand Manan, N. B., her home port. She is a two-masted schooner, with two gasoline engines. She is 76 feet long, 18½ feet beam, 6 feet deep, with a tonnage of 35 tons. She carried three men, Capt. Grosvenor C. Wells, Engineer Franklin, and a cook. When about a mile and a half east of Ram Island Light, and approximately one mile to the south of Inner Heron Island, fire broke out in her cabin. Capt. Wells gave

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the alarm; salt was thrown on the fire; water was bailed up in buckets and used, with the effect of somewhat deadening the fire. Engineer Franklin went into the cabin, shut off the gasoline on the port side, got the flag, and put it in the rigging as a call for help. On account of the nearness of the fire to the wheel, the vessel had to be steered by the use of a 10-foot pole. The schooner was put on a northerly course up the Damariscotta river in an attempt to reach a beach. The wind was estimated to be 15 to 25 miles an hour. Shortly after, motorboats came along and offered assistance; Capt. Wells replied that he was going to beach the schooner on Heron Island. Shortly after that the Monhegan came alongside, a line was thrown to her, and the Morse was taken in tow.

The Monhegan is a gasoline boat 50 feet long, 10 feet beam, 7 feet deep, of a burden of 20 tons, owned by the two libelants. Shortly after 9 o'clock on the morning of November 30th she left New Harbor, Me., for Boothbay Harbor. When nearly across to Thumbcap, Capt. Brackett sighted the Morse about 3 miles distant and off the island known as the Hypocrites. He called the attention of his son to the great volume of smoke coming out of the aft part of the Morse. He shortly saw the mainsail of the schooner drop, flames shooting out from around her house, and later the flag, run up in the main rigging, union down. Capt. Brackett immediately speeded up his boat and steered for the Morse. In about 15 minutes he arrived within hailing distance; he saw three men standing in the forward part of the vessel, and flames shooting up out of the cabin window and companion way; the mainsail was lashed against the starboard rigging; the foresail and two jibs still up. The sea was running high. A towline was thrown from the schooner to the Monhegan. There were no beaches in that locality, except up the Damariscotta river, a distance of 3 or 4 miles. The testimony tends to show that the Morse, on the arrival of the Monhegan, was 300 to 400 yards to the windward of dangerous ledges, "and was making about the same leeway as headway"; that there was a choppy sea, and a ground swell heaving in. The Monhegan then towed the Morse to a point on the lee side of Inner Heron Island, where the fire was extinguished, and the schooner was then towed to Boothbay Harbor.

The testimony leads to the conclusion that the captain of the Morse was in apprehension of the loss of the vessel; that before the arrival of the Monhegan he was advised to leave her, and had some idea of doing so. In order to render the necessary assistance, the libelants were compelled to expose their boat to some peril, by bringing her alongside a burning gasoline schooner, it being evident that there was gasoline aboard, and that there was danger of loss to any boat coming in contact with the burning vessel. The value of the Morse is variously estimated from $2,800 to $5,000 or $6,000. The value of the Monhegan was from $5,000 to $6,000.

The claimant urges that only a short time was consumed in rendering the salvage services, and that such services should be regarded, not in the nature of salvage, but merely as towage.

On examination of the proofs, it is clear that the services rendered

by the Monhegan were voluntary, performed with promptness and efficiency, and under circumstances which seemed to require prompt service. Danger was apparent from the evident existence of gasoline tanks aboard the Morse, and the knowledge that such tanks were liable at any time to explode. The services were clearly in the nature of salvage; they were not performed merely to "expedite the voyage" of the Morse. The Ann C. Stuart (D. C.) 245 Fed. 679, 680; The Rebecca Shepherd (D. C.) 148 Fed. 727. In the Lottie E. Hopkins (D. C.) 133 Fed. 405, 408, this court had occasion to cite Baker v. Hemenway, 2 Low. 501, Fed. Cas. No. 770, in which case Judge Lowell held that the intent of Congress was clearly to give to tugs sufficient gratuity to induce prompt and even eager assistance, and that the award should be enhanced slightly by a great value at risk, "though in no important or definite proportion to value." In the case at bar it is not important to consider the diverse testimony as to the value of the Morse. The award must be given, as was said in The Lyman M. Law (D. C.) 122 Fed. 816, not upon any mere arbitrary judgment, but under the principles of the law of salvage, which fixes the different elements, stated in that case, which go to make up a salvage award. It is not necessary, however, to consider in detail precisely what elements enter into an award. Clearly an award should be given sufficient to encourage tugs to expose themselves to some danger in rendering service to a vessel in distress. Under the proofs, I cannot allow the full sum asked for by the libelants; but I think it reasonable to give an award of $500. This is to be in full to the libelants for all participating in the salvage service. The libelants recover costs.

A decree may be presented in accordance with this opinion.